the lands of others in order to carry on its business, the courts will regard this as a legislative declaration that it is against public policy to permit any restriction whatever of such business by private contract (West Virginia Transportation Company v. Ohio P. Lines Company, 22 W. Va. 617, 46 Am. Rep. 527), I dissent. This question has been discussed more fully in Central New York Telephone & Telegraph Company v. Averill, 105 N. Y. Supp. 378, a decision handed down by this court.

Briefly, contracts in restraint of trade are void if they are so unreasonable as unduly to interfere with the rights of the public. The test is not whether the corporation has the right of eminent domain, or whether its property is impressed with a semipublic use, but whether or not such rights are unduly affected. It may well be that a semipublic corporation might be unable to make contracts that would be perfectly valid if made by an individual or by a private corporation. But the reason is not because certain powers are conferred upon the former, but because, by the very nature of its operations, public interests are more likely to be affected. So long as the charter is not violated—so long as the public are not injured—any fair and reasonable contract of such a character is perfectly valid. Each case that arises must be decided upon its own merits and upon the particular circumstances developed.

As has been said, the contract in question here seems a reasonable one. The further question whether, assuming this particular clause to be illegal, the whole contract must be held void, need not, therefore, be discussed. W. U. Tel. Co. v. B. & S. Ry. Co. (C. C.) 11 Fed. 1.

An order may be entered granting the motion herein so far as the issue of the 67 shares of stock is concerned. As to all of the other matters the motion is denied.

Ordered accordingly.

---

(121 App. Div. 708.)

### WEINSTEIN v. SINGER MFG. CO.

(Supreme Court, Appellate Division, First Department. November 8, 1907.)

1. MASTER AND SERVANT—TORTS OF SERVANT—LIABILITY OF MASTER—SCOPE OF EMPLOYMENT.

Where employés are acting under written contracts with their employer, in which their duties are distinctly specified, the authority of one being limited to selling and collecting for sewing machines, and the repossessing and delivering to the employer of such machines as it might direct, and the employment of the other being that of a managing salesman at the employer's store, with such other services as should be required of him, but not authorized to contract debts for the employer, as to bring suit without express authority, the employer is not liable for a trespass committed by them in retaking a machine which they had not been directed to retake.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1217–1225, 1229.]

2. WITNESSES—CROSS-EXAMINATION—QUESTIONS.

Where a witness had testified as to a conversation he had had with defendant's salesman during which a person was introduced to him as a superintendent, it was competent on cross-examination to ask him if the salesman had introduced him to some one else without characterizing the person as a superintendent.

Appeal from Trial Term.

Action by Sofi Weinstein against the Singer Manufacturing Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, SCOTT, and LAMBERT, JJ.

Henry A. Prince, for appellant.
Alfred S. Katzenstein, for respondent.

INGRAHAM, J. The defendant made a contract with the plaintiff's husband, whereby the defendant rented to plaintiff's husband a sewing machine valued at $60, for which he agreed to pay $5 on the delivery of the machine, which was accepted as payment for the first week's rent, and then at the rate of $1 per week, payable in advance on each Monday thereafter for 43 weeks. It was further provided that if default should be made in any of the payments, or if plaintiff's husband should sell or offer to sell, or to remove or attempt to remove, the machine from his residence without the consent of the defendant, he would return the machine to the defendant, and authorized the defendant or its agents to enter his premises wherever said machine might be and take and carry the same away, and waived notice of sale. This contract was made by one P. Burg, as salesman, for the defendant, and he subsequently collected $1 for a number of weeks.

The plaintiff's husband testified that he called at the store of the defendant on Eighth avenue in the city of New York on the Monday before the machine was taken away, and saw Burg, who referred him to the superintendent; that the latter said to him, "You owe some money," to which the witness answered that he could not pay because he was out of work, whereupon the superintendent said, "If you don't pay that money, the balance of your due, to-day, to-morrow you will your machine have taken away;" that he would send Mr. Burg to take away the machine the next day. The plaintiff then testified that on the day after this interview Burg came to her house and demanded the money that was due; that she told him she had no money, and asked him to call in the evening, when she would get him some; that Burg went into the front room, and the witness stood in the doorway and tried to stop him; that Burg then took hold of her by her right arm and gave her a push back; that Burg then told another man who was with him to hurry up and take the machine, and as they were taking it out she stood in the doorway, when they gave her a "bunk with the corner of the machine into the stomach"; that the two men, Burg and his assistant, were then carrying the machine out, and Burg got hold of her by the sleeve and threw her; that she was pregnant, and there resulted a miscarriage. Upon cross-examination plaintiff described the occurrence as follows:

"And then I stood firm, so that they could not take the machine out, and I went and got hold of it, on the corner, so they wouldn't take the machine out. When I held the machine at the corner, he pulled me away—Mr. Burg. That was not the right arm that went before. At that time he pulled me

away, and the machine struck me in the belly. Now I told you that is when he was trying to take out the machine."

Burg was then called as a witness for plaintiff, and testified that he was in the employ of the defendant and leased this machine to the plaintiff's husband; that he was at that time collecting and leasing machines; that he went to the plaintiff's place on the 12th of April, 1904, with one Combs, and took the machine away; that he took the machine away without anybody telling him to, and subsequently delivered it to the managing salesman of the defendant. Burg then produced his contract of employment with the defendant, which provided that Burg was to act as salesman and collector for the defendant and in consideration of these services was to receive a commission; that Burg should locate any machines to the satisfaction of the company's agent or manager without expense to the company, and also "to repossess and deliver to the company any machine they may direct, without additional compensation." On cross-examination Burg testified that plaintiff's husband moved several times after renting the machine and he was unable to find him; that he finally located him in Fifth street; that during this time plaintiff's husband had paid nothing for the machine—had broken his agreement with the company by moving and failing to pay the installments.

On behalf of the defendant Burg testified that he went to this house with Combs, who was the defendant's managing salesman; that he took the machine out into the hall, when the plaintiff hollered "Fire!" which caused a number of persons to gather; that he never touched the plaintiff at all; that the machine, which was about 2 feet 6 inches high, was dragged out and not raised from the floor; that the machine never struck the plaintiff, and that neither he nor Combs touched her; that he never saw plaintiff lying on the floor; that after the machine was partly out of the room she took hold of it, but that he pulled it away from her; that Combs did not touch the plaintiff, and she was not in any way assaulted. Combs corroborated this testimony.

The court then submitted the case to the jury, leaving it to them to say whether there was an assault perpetrated. If they found an assault had been committed, they were then to determine by whom it was committed, and whether it was committed by Burg in the course of his employment, leaving it to the jury to say whether he was a mere collector, and charging that they could not fix the responsibility on the defendant for these acts unless the proof warranted the jury in concluding that he was clothed with authority to take the machine; but if an assault was perpetrated by Burg, and the jury found that he was nothing more than a mere collector, that there was then no responsibility upon this defendant. The defendant excepted to the charge to the effect that, if the acts of Burg or Combs were in the course of their employment, the defendant was responsible, to which the court said:

"I reiterate that charge, gentlemen. I charge you that the wrongful act, if any, on the part of either of these employés, of itself is not sufficient to mulct the defendant; but you must go further, and find that such wrongful act, if any, was perpetrated while in the course of their employment."

The contract between Combs and the company was put in evidence, from which it appeared that he was employed as managing salesman to superintend the sales and employment of salesmen or other employés according to the instruction of the company, and also to render such other services as the company may require at the store, No. 303 Eighth avenue, and in the territory adjacent thereto, for which he was paid in full for his services $25 per week. He was not authorized to contract any debt, or to bring or permit any suit, without express authority from the company, nor to make any purchases or incur any liability on behalf of the company. I do not think that either of these men had authority from the company to take the machine away from the plaintiff's husband, and certainly no authority 'to use force for that purpose. There is nothing in the relation of either of these men to the defendant, nor the authority conferred upon them by their contracts, under which they were working for the defendant, which authorized them to take any act in recovering possession of his machine, except as directed by the defendant. Assuming that the plaintiff's husband went to the defendant's store on Eighth avenue, where Combs was in charge, and was told by Combs that he would send and have the machine taken away, that could not bind the defendant, because Combs had no authority, so far as appears, to take the machine from the possession of the plaintiff's husband, and neither Combs nor Burg had any authority, express or implied, which would make the company liable for an unauthorized act by either or both of them.

This question was presented to the Appellate Division of the Second Department in Feneran v. Singer Mfg. Company, 20 App. Div. 574, 47 N. Y. Supp. 284. In McGrath v. Michaels, 80 App. Div. 458, 460, 81 N. Y. Supp. 109, 110, it was held that:

"In a case of this nature, it is actual authority, not apparent authority, which governs. The jury may have inferred that the acts of Shepard were evidence that apparently he had authority to remove the goods without the consent of the plaintiff, and that the assault was committed in the exercise of such authority. But the evidence of the limitation of his employment to the collection of the installment or to a removal of the goods only with the consent of the plaintiff is clear, explicit, and uncontradicted."

Burg and Combs were acting under written contracts with the defendant, in which their duties were distinctly specified and their authority to act for the defendant limited. There was no question of apparent authority from which the plaintiff could assume that the acts of the agents were authorized by the defendant, and the liability of the defendant must depend upon an express authority which defendant gave to these agents to remove this machine. If neither had authority from the defendant to retake it, then their act in retaking it was not in the course of their employment. Combs had no authority in relation to machines after they had been sold either for cash or under agreements made upon forms and blanks of the defendant. He was the managing salesman, authorized to sell and dispose of its sewing machines at its store, No. 303 Eighth avenue, to superintend the sales and employment of salesmen and other employés in said territory according to the instruction of the company, and to render such other

services as the defendant should require, but was not authorized to contract any debts on account of defendant, or to bring or permit any suit without express authority of the company. Burg was employed to act as salesman and collector for the defendant, with no authority to act for it in any other capacity. He agreed that, if the defendant desired to know the location of any machine, he should locate the same without expense to the company, and he agreed to repossess and deliver to the company any machine that they may direct without additional compensation. The only authority in relation to machines that had been sold was that he agreed to deliver to the defendant any machine that they should direct, and the evidence is uncontradicted that he received no direction from the company in relation to this machine. When Combs and Burg attempted to take this machine from the possession of the plaintiff or her husband, they were not acting under any authority conferred on them by the defendant or in the course of their employment, and I do not think that defendant was liable for a trespass committed in taking possession of the machine.

There was error committed in restricting the cross-examination of the plaintiff's husband. The plaintiff's husband had testified as to an interview with Burg at the company's office on the Monday before this incident, in which a person designated by Burg as the superintendent had said:

"If you don't pay that money, the balance of your due, to-day, tomorrow you will your machine have taken away."

Upon cross-examination he was asked about this interview, and said he went to the office of the company and saw Burg there, and he was then asked:

"And he introduced you then to some one else at the office? A. Yes, sir. Q. And this some one else was that you—"

Whereupon the court said:

"Introduced him to some one else as superintendent. You must frame your question upon the testimony. He introduced him to some one else as superintendent. That is the basis of my ruling, and I insist on your asking the way he answered."

Counsel thereupon declined to ask it, and the court said:

"You cannot put that question."

To this defendant excepted. This was error. On cross-examination counsel was entitled to ask the witness a question which would tend to show just what was said at the interview. He was not bound to repeat the question in the way the witness had answered it before, but was entitled to ask him whether he was introduced to some one else at the office, without characterizing the person to whom he was introduced. It is difficult to see how the witness could know that the person to whom he was introduced was the superintendent. He could say that Burg said he was the superintendent; but counsel was not bound, in framing his question, to say he was superintendent. A full and free cross-examination in a case of this character is quite important, and, where it appeared that the salesman had said that some-

body was superintendent, the defendant was entitled to carefully sift the evidence by cross-examination.

I think this judgment should therefore be reversed, and a new trial ordered, with costs to defendant to abide the event.

PATTERSON, P. J., and SCOTT and LAMBERT, JJ., concur. CLARKE, J., concurs in result.